# UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

JOHN M. WILKINSON,          )
on behalf of himself and all others    )
similarly situated,                )
                              )
        Plaintiff         )
                              )
    v.                    )
                              )   CASE NO._____
COUNTRYWIDE FINANCIAL       )
CORPORATION, a California      )
corporation; BANK OF AMERICA   )
CORPORATION, a North Carolina   )
corporation; COUNTRYWIDE     )
BANK, FSB, a California corporation, )
COUNTRYWIDE HOME LOANS, INC., )
A DIVISION OF COUNTRYWIDE   )
BANK, FSB, a California corporation, )
FULL SPECTRUM LENDING DIVISION, )
a California corporation,         )
                              )
        Defendants     )

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, John M. Wilkinson ("Plaintiff"), on behalf of himself and all others

similarly situated, by and through his attorneys, and in support of Plaintiff's Class Action

Complaint, alleges as follows:

## JURISDICTION & VENUE

1.     This Court has subject matter jurisdiction over this action pursuant to the

Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because Plaintiff and Class

members are of diverse citizenship from the Defendants; there are more than 100 Class

members nationwide; and the aggregate amount in controversy exceeds $5,000,000.  This

court has personal jurisdiction over the parties because Defendants conduct substantial business in this state, have had systematic and continuous contacts with this state, and have agents and representatives that can be found in this state.

2.     Pursuant to 28 U.S.C. § 1391(a)(2), venue is proper in the District of Maine because a substantial part of the acts giving rise to Plaintiff's claims, such as the transactions by which Defendants became privy to Plaintiff's Sensitive Information (as hereinafter defined), occurred in the District of Maine.

## <u>NATURE OF ACTION</u>

3.     This is a consumer class action lawsuit brought on behalf of Plaintiff individually, and on behalf of all other persons similarly situated whose Sensitive Information, including but not limited to, customers' and mortgage applicants' names, social security numbers, home and/or office addresses, telephone numbers, credit and bank account information, and other financial information ("Sensitive Information") was intentionally and illegally distributed and/or sold by employees, representatives, and/or agents of Countrywide Financial Corporation ("Countrywide"), Countrywide Bank, FSB ("Countrywide Bank"), Countrywide Home Loans, Inc., a division of Countrywide Bank, FSB ("Countrywide Home Loans"), Full Spectrum Lending, a division of Countrywide Bank, FSB ("Full Spectrum"), and bank of America Corporation ("Bank of America"), (hereinafter referred to as "Defendants") to unauthorized entities during the period beginning in 2006 to the present (the "Class").

4.     Defendants deliberately, recklessly, and/or negligently failed to maintain reasonable procedures to protect customers' Sensitive Information.  As a result of Defendants' deliberate, reckless, and/or negligent conduct, its representatives and/or

agents obtained Plaintiff's and Class members' Sensitive Information and sold it to the unauthorized entities ("Buyers") without the consent of Plaintiff and Class members.

5.      Defendants' and their agents' actions give rise to claims of common law negligence, bailment, breach of implied contract, invasion of privacy, violations of the Maine Unfair Trade Practices Act, 5 M.R.S.A. § 205-A *et seq*., violations of the Fair Credit and Reporting Act, 15 U.S.C, § 1681 *et seq.* ("FCRA"), and conversion.

6.      Plaintiff seeks damages suffered as a result of Defendants' practices, including but not limited to statutory damages, compensatory damages, and injunctive relief.

**PARTIES**

7.      Plaintiff John M. Wilkinson is a resident of Portland, Maine.  Plaintiff's mortgage with Key Bank was purchased by Defendants sometime after April 2, 2007. Plaintiff's mortgage account and information included his address, telephone number, social security number, credit information and other sensitive personal and financial information.

8.      Defendant, Countrywide, is a Delaware corporation with it principal place of business located in Calabasas, California, and is a wholly owned subsidiary of Bank of America Corporation.  Founded in 1969, Countrywide is a diversified financial marketing and service holding company engaged primarily in residential mortgage banking and related businesses.

9.      Defendant, Countrywide Bank, is a division of Countrywide and is a Delaware corporation with its principal place of business located in Calabasas, California, and is a wholly owned subsidiary of Countrywide.

10.     Defendant, Countrywide Home Loans, is a division of Countrywide Bank and is a Delaware corporation with its principal place of business located in Calabasas, California, and is a wholly owned subsidiary of Countrywide.

11.     Defendant, Full Spectrum, is a division of Countrywide Bank and is a Delaware corporation with its principal place of business located in Calabasas, California, and offices in Pasadena, California, and is a wholly owned subsidiary of Countrywide.

12.     Defendant, Bank of America, is a Delaware corporation and has its principal place of business located in Charlotte, North Carolina.  Bank of America provides financial and banking services throughout the United States.

## FACTUAL BACKGROUND

13.     Founded in 1969, Countrywide is a diversified financial marketing and service holding company which through its subsidiaries is engaged in real estate finance-related businesses, including mortgage banking, banking and mortgage warehouse lending, dealing in securities and insurance underwriting.

14.     On July 1, 2008, Countrywide Financial Corporation merged with Bank of America and has continued operating under the name Countrywide Financial Corporation.

15.     Plaintiff Wilkinson's mortgage was purchased by Countrywide sometime after April 2, 2007.  His mortgage account information included Sensitive Information, such as his name, home and work address, telephone, social security number, and other personal and financial data.

16.     Countrywide can obtain customers by purchasing already established mortgages from other companies.  In addition, a customer can commence opening an

account with Countrywide over the phone by calling the toll-free Countrywide customer service line, filling out a preliminary application online, or visiting and completing account application forms at one of many Countrywide store locations located nationwide.

17.     Depending on the amount and type of loan being sought, an individual seeking to open an account with Countrywide may provide his or her personal and financial information, including but not limited to name; date of birth; social security number; current contact information, including his or her home and office address and telephone numbers; the address of the property to be acquired, if applicable; personal bank account information, including bank account numbers, and the amounts contained in each personal bank account; credit history, including prior loans, credit card debt, and a certified credit history report; employment information, including paycheck stubs; and other relevant personal and financial information.

18.     Once the application to open an account is completed and all required supporting documents are submitted, Countrywide may take between two or three business days to several weeks to approve the application.   Once the account is set up, the Countrywide customer typically receives monthly statements for payments in the mail, or may set up an online account to automatically receive and pay statements online through the use of the customer's credit card.

19.     In the instance of Defendants, Sensitive Information is collected from their customers and provided to third parties.  According to Defendants, they "collect and maintain customer and former customer data."[1]  Defendants' Privacy Policy states:

---

[1] *See* "Privacy and Security in the Countrywide Family" available at
http://my.countrywide.com/privacy.aspx

We collect information:

- you provide us on applications and other forms (such as your phone, Social Security and account numbers, assets, income and employment history);

- about your transactions with us (such as your loan balances, payment history and other account information);

- about your credit history from a credit reporting agency;

- about you or your property from business partners and service providers (such as a property appraisal, purchase contract or membership number); or from current or past employers or other financial institutions when verifying information you provide on an application or other form; and

- about you from consumer purchasing and census data providers to develop competitive marketing programs for our customers.

We disclose some of this data to third parties (such as credit reporting agencies, regulators and loan investors).  We may share some of this information with companies performing services on our behalf (such as the vendor who prepares our monthly statements).   These service providers agree to keep the information confidential and not use it for any other purpose.

20.     Plaintiff and the members of the Class did not authorize the employees of Defendants to access their Sensitive Information for purposes of selling, brokering, or otherwise disseminating said information to unauthorized third parties, including Buyers.

### *Standard Business Practices for Ensuring Information Safety*

21.     Federal and state legislatures have passed a number of laws in recent years to ensure companies protect the security of sensitive personal information in the company's files.  These laws include requirements for the handling of personal information by financial institutions[2] and also impose proactive obligations on companies to maintain reasonable security measures to protect the personal information of individuals.[3]

22.     The Federal Trade Commission ("FTC") has issued a publication entitled "Protecting Personal Information:  A Guide for Business"[4] ("FTC Report"), attached hereto as Exhibit A.  In this publication, the FTC provides guidelines for businesses on how to develop a "sound data security plan" to protect against crimes of identify theft. To protect the personal sensitive information in their files, the FTC Report instructs businesses to follow the following guidelines:

a.      Understand the vulnerabilities of your computer system and follow the advice of experts in the field;

b.      Keep an inventory of all computers and laptops where the company stores sensitive data;

---

[2] The Gramm-Leach-Bliley Act, enacted on November 12, 1999, requires the FTC and other government agencies that regulate financial institutions to implement regulations to carry out the Act's financial privacy provisions.  The regulations required all covered businesses to comply with the Act by July 1, 2001.
[3] *E.g.,* Cal. Civ. Code § 17980.80 *et seq.* obligates companies that possess personal information to take all reasonable steps to destroy the personal information no longer needed by the business, notify residences whose encrypted information has been acquired in an unauthorized manner, and to implement reasonable security measures.
[4] *See* http://www.ftc.gov/bcp/edu/pubs/business/privacy/bus69.pdf

c.      Use social security numbers only for required and lawful purposes and do

not store these numbers unnecessarily, such as for an employee or

customer identification number;

d.      Encrypt the personal information particularly if the sensitive information

is shipped to outside carriers or contractors.  In addition, the business

should keep an inventory of all the information it ships;

e.      Do not store sensitive computer data on any computer with an Internet

connection unless it is essential for conducting the business;

f.      Use an intrusion detection system for detecting network breaches that is

updated frequently to address new types of computer hacking;

g.      Maintain a central log file of security-related information to monitor

activity on the network so as to spot and respond to attacks;

h.      Monitor outgoing traffic for signs of a data breach, watching for

unexpectedly large amounts of data being transmitted from your system to

an unknown user;

i.      If large amounts of information are being transmitted from the network,

investigate to make sure the transmission is authorized;

j.      Have in place and implement a breach response plan;

k.      Check references or do background checks before hiring

employees who will have access to sensitive data;

l.      Regularly remind employees of your company's confidentiality and

security standards for handling sensitive data to keep customer

information secure and confidential;

m.  Know which employees have access to consumers' sensitive personally identifying information, paying particular attention to data like Social Security numbers and account numbers; and

n.  Have a procedure in place for making sure that workers who leave your employ or transfer to another part of the company no longer have access to sensitive information, terminating their passwords, and collecting keys and identification cards as a part of the check-out routine.

23.  The California Department of Consumer Affairs' Office of Privacy Protection published a similar set of guidelines in February 2007 report entitled "Recommendation Practices of Notice of Security Breach Involving Personal Information" ("California privacy report"), attached hereto as Exhibit B.  The California Privacy report states guidelines similar to those found in the FTC Report, including one for businesses to encrypt higher-risk personal information when they are contained in portable computers and devices.

### *Security Breaches Lead to Identify Theft*

24.  As defined in the Fair and Accurate Credit Transactions Act of 2003, Pub.L. 108-159, Dec. 4, 2003 (FACTA) "identity theft" is a fraud committed or attempted, using a person's identifying information without authority.  Generally, identify theft occurs when a person's identifying information is used to commit fraud or other crimes. These crimes include credit card fraud, phone or utilities fraud, bank fraud, and government fraud.  The Federal Trade Commission ("FTC") has stated that identity

theft has been a serious problem in recent years, with approximately 9 million Americans as the victims of identity theft each year.[5]

25.     As the United States Government Accountability Office noted in a June 2007 report on Data Breaches ("GAO Report"), more than 570 breaches involving theft of personal identifiers such as social security numbers were reported by the news media from January 2005 through January 2007.[6]  As the GAO Report states, these data breaches involve the "unauthorized or unintentional exposure, disclosure, or loss of sensitive personal information, which can include personally identifiable information such as Social Security numbers (SSN) or financial information such as credit card numbers."

26.     The GAO Report stated that identify thieves can use identifying data such as social security numbers to open financial accounts and incur charges and credit in a person's name.  As the GAO has stated, this type of identity theft is the "most damaging" because it may take some time for the victim to become aware of the theft and can cause significant harm to the victim's credit rating.

27.     In addition, the GAO states that victims of identity theft will face "substantial costs and inconvenience repairing damage to their credit records," as well the damage to their "good name."

28.     According to the Federal Trade Commission (FTC), nine million Americans have their identities stolen each year.[7]  Identity theft victims must spend countless hours and money repairing damage to their good name and credit record.

---

[5] *See* "About Identity Theft," in FTC Publication, Fighting Back Against Identity Theft, *available at* http://www.ftc.gov/bcp/edu/microsites/idtheft/consumers/about-identity-theft.html
[6] *See* http://www.gao.gov/new.items/d07737.pdf
[7] *See* FTC Identity Theft Site, http://www.ftc.gov/bcp/edu/microsites/idtheft/consumers/about-identity-theft.html

Identity thieves use stolen personal information such as social security numbers for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud.  In addition, a person whose personal information has been compromised may not see any signs of identity theft for years.  According to the United States Government Accountability Office which conducted a comprehensive and extensive study of data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft.  Further, once stolen data have been sold or posted on the Web, **fraudulent use of that information may continue for years.**  As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[8]

29.      Identity theft crimes often include more than just crimes of financial loss. Identity thieves also commit various types of government fraud, such as: obtaining a driver's license or official identification card in the victim's name but with their picture; using the victim's name and social security number to obtain government benefits; or filing a fraudulent tax return using the victim's information.  In addition, identity thieves may obtain a job using the victim's social security number, rent a house or get medical services in the victim's name, and may be given the victim's personal information to police during an arrest resulting in an arrest warrant being issued in the victim's name.

30.      The unauthorized disclosure of a person's social security number can be particularly damaging since social security numbers cannot be easily replaced like a credit card.  In order to obtain a new social security number, a person must show

---

[8]  http://www.gao.gov/new.items/d07737.pdf (emphasis added)

evidence that someone is using the number fraudulently or is being disadvantaged by the misuse.[9]  Thus, a person whose personal information has been stolen cannot obtain a new social security number until the damage has already been done.  Furthermore, obtaining a new social security number is not an absolute prevention against identity theft. Governmental agencies, private businesses, and credit reporting businesses likely still have the person's records under the old number, and using a new number will not guarantee a fresh start.  For some victims of identity theft, a new number may actually create new problems.  Since prior positive credit information is not associated with the new social security number, it is more difficult to obtain credit due to the absence of a credit history.

31.     Thus, Plaintiff and the Class now face years of constant surveillance, monitoring and loss of rights, not to determine whether they will become an identity theft victim, because they already are, but to prevent further loss and damage.

### *Countrywide's Privacy Policy*

32.     Defendants have represented to Plaintiff and the Class that they understand the value in protecting Sensitive Information.[10]  Defendants promised to "safeguard" their customers' data by:

- setting policies and procedures for carefully handling customers' information;

- limiting employee access to sensitive information;

- protecting against unauthorized access to customer data using date encryption, authentication, and virus detection technology;

---

[9] Identity Theft and Your Social Security Number, SSA Publication No. 05-10064, October 2007, ICN 46327
[10] *See* Countrywide Privacy Policy, *available at* http://my.countrywide.com/privacy.aspx

- requiring service providers who do business with us to comply with privacy laws;

- auditing company security practices;

- monitoring our websites through recognized online privacy and security organizations such as Cybertrust Corporation; and

- conducting background checks on all employees and providing privacy training.

33.     Further, the Full Spectrum website has in the past provided the following response to the question "[i]s my personal information secure?" on its 'Frequently Asked Questions" page:

> At Countrywide Bank's Full Spectrum Lending Division we maintain stringent security standards to ensure that your private data remains safe. We use advanced data encryption and storage technology to protect your sensitive personal information, and we are proud members of recognized online privacy and security organizations such as TruSecure® Corporation, and VeriSign™ , Inc.

34.     Defendants failed to follow the security measures outlined in the above-mentioned Countrywide privacy policy in failing to detect a security breach whereby one of its employees stole with the intent to sell over 2 million customers' and mortgage applicants' Sensitive Information without detection for a period of at least two years.

### Details of the Breach

35.     On Friday, August 1, 2008, the Federal Bureau of Investigation arrested a

Countrywide employee, Rene L. Rebollo, Jr. ("Rebollo") for engaging in a scheme to steal and sell Sensitive Information from as many as 2 million Countrywide customers and mortgage applicants.

36.    Rebollo is a resident of Pasadena, California and worked as a senior financial analyst at Defendant Full Spectrum's (Defendant Countrywide Bank's subprime lending division) Pasedena office, during the Class period until July, 2008.

37.    Over the two-year period, Rebollo copied information on about 20,000 Countrywide customers at a time on Sunday nights by using a Defendant Full Spectrum computer ("Full Spectrum Computer").

38.    Renollo opened a personal bank account for holding what he estimated to be up to $70,000 in proceeds from Countrywide data sales.

39.    Upon information and belief, large quantities of names associated with several columns of numeric data, containing telephone numbers, addresses and Social Security account numbers along several thousand lines of data were contained on each spreadsheet of information downloaded by Rebollo onto his thumb drive.

40.    Rebollo charged between $400 and $500 for batches of thousands of mortgage "leads"—personal account information that presumably would help buyers solicit new mortgages from the Defendants' applicants, some of whom had been denied loans by Defendants.  At that rate, the U.S. Attorney's office reports that Rebollo would have compromised up to 2 million customer profiles for about 2.5 cents each.

41.    Upon information and belief, Defendants negligently failed to install reasonable security measures in a computer containing customers' Sensitive Information. The security measures prevent the downloading of the Sensitive Information to portable devices.  Rebollo discovered this security lapse and used a thumb drive to download and

compromise Plaintiff's and the Class' Sensitive Information.  The security measures that Defendants failed to take were employed by Defendants on all other computers containing Plaintiff's and the Class' Sensitive Information.

42.     On July 7, a confidential witness working for the FBI ordered approximately 38,000 customer profiles for $4,000 from Wahid Siddiqi ("Siddiqi"), a customer of Rebollo's.

43.     The witness asked if the leads were "fresh" from Countrywide, to which Siddiqi allegedly replied in the affirmative and added that the data had full Social Security numbers.

44.     On July 15, 2008, Rebollo voluntarily turned over to the FBI a thumb drive he used to download the Sensitive Information from the Full Spectrum Computer on his personal computer.  A criminal complaint was filed against Rebollo and Siddiqi on July 31, 2008.

45.     Additional measures could have been taken by Defendants to prevent an incident like this—according to Pat Clawson, chairman and CEO of Lumension Security, if companies had policies that require any device that touches the network to be checked.[11]   "No matter if that device is a laptop or a handheld, it has to go through a scanning process to find if they have all the requisite materials before you allow them to access the network," and clearly that did not happen here.  Many companies that handle sensitive data also have systems that enforce encryption rules and prevent most works

---

[11] *See* "Security Oversight May Have Enabled Countrywide Breach: FBI affidavits offer more insight into how a man stole customer data from Countrywide.", Nancy Gohring, IDG News Service PC World, August 5, 2008

from copying sensitive data.  Countrywide detected the breach and alerted federal authorities, according to Susan Martin, Executive Vice President of Corporate Communications at Countrywide Home Loans.

46.     Beth Givens, director of the nonprofit Privacy Rights Clearinghouse, stated that the security  breach was among the ten largest security breaches involving sensitive information during the past 18 months.[12]  Ms. Givens commented further: "It's the potential for new-account fraud that arises when Social Security accounts are compromised."  Upon information and belief, Class members' Sensitive Information could have been used for outright fraud, such as identity theft.

47.     The spokesman for the U.S. Attorney's Office for the Central District of California, Thom Mrozek, stated that "[s]ome, perhaps most, and possibly all the names were being sold to people in the mortgage industry to make new pitches."

48.     Mortgage leads are valuable to buyers because of the potential payoffs to intermediaries when loans are made.  Social Security numbers alone are valuable because they can be used to steal identities.  With a stolen social security number, it is possible to fraudulently use the victim's social security number and credit line to open new bank/credit accounts or obtain loans.

49.     Thom Mrozek stated that the breach of customers' and mortgage applicants' social security numbers, "raises the specter of significant problems for the Countrywide clients."

---

[12] *See* "Arrests in sale of personal data from 2 million mortgage applications," by Scott Reckard and Joseph Menn, Los Angeles Times, Saturday, August 2, 2008, *available at* http://www.heraldnet.com/article/20080802/BIZ/633244343/1012/BIZ03

50.     Defendant Countrywide's Communications Vice President Susan Martin stated that 19,000 customers had so far been identified as having their identities compromised.

51.     Countrywide is reportedly analyzing the stolen data to determine whether any customer identities have been compromised.

52.     Martin also stated that a "special hotline" was set up at (800) 669-6607 to assist customers.

53.     The "hotline," however, is the same number as Defendants' Existing Home Loan Information Customer Service line, with no option to connect to a line concerning the present security breach, and it is closed on weekends and evenings after 7 pm. [13]

54.     Countrywide's parent company, Bank of America, has not yet responded with information or an announcement regarding the type of security it employs to prevent this type of theft.

55.     Plaintiff and Class members did not agree to allow Countrywide to disseminate their Sensitive Information to any unauthorized lender or unauthorized third-party including, Buyers.

56.     Plaintiff and Class members' Sensitive Information has been improperly and illegally sold and/or disclosed to Buyers by employees and/or agents of Defendants.

---

[13] See Contact Information, Existing Home Loan Information Customer Service line, *available at* http://www.countrywide.com/global/contact.asp

57.     Plaintiff and Class members did not authorize the employees of Defendants to access their Sensitive Information for purposes of selling, brokering, or otherwise disseminating said information to unauthorized third parties.

## **CLASS ACTION ALLEGATIONS**

58.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this class action, individually and on behalf of all other persons whose consumer reports, personal information, and/or financial information was stolen, disseminated and/or sold by Defendants and/or Defendants' employees as part of an impermissible dissemination to Buyers, without the consent of consumers, during the period beginning in 2006 to July 2008 (the "Class").  The Class includes those persons or entities whose Consumer Reports, personal information, and/or financial information were disseminated and/or sold by Defendants and/or Defendants' employees.  The Class does not include Defendants, or their officers, directors, agents, or employees.

59.     On information and belief, the Class is comprised of millions of consumers, making the joinder of such cases impracticable.  Disposition of the claims in a class action will provide substantial benefits to both the parties and the Court.

60.     The rights of each member of the Class were violated in a similar fashion based upon Defendants uniform actions:

        a.      Whether Defendants were negligent in collecting and storing Plaintiff's and Class members Sensitive Information;

        b.      Whether Defendants took reasonable steps and measures to safeguard Plaintiff's and Class members' Sensitive Information;

        c.      Whether Defendants' conduct was reckless;

d. Whether Defendants owed the legal duties discussed herein to Plaintiff and Class and whether Defendants breached those duties;

e. Whether Defendants breached their duty to exercise reasonable care in storing Plaintiff's and Class members' Sensitive Information by storing that information on its computer systems in the manner in which they did;

f. Whether Defendants breached their duty to Plaintiff and Class members by failing to keep their Sensitive Information secure;

g. Whether Defendants were negligent in failing to keep Plaintiff and Class members Sensitive Information secure;

h. Whether implied contracts existed between Defendants and Plaintiff and Class members;

i. Whether Defendants breached the implied contracts between them and Plaintiff and Class members;

j. Whether Defendants' failure to protect the personal information of Plaintiff and the Class violated their legally protected privacy interest under the U.S. Constitution;

k. Whether Plaintiff and the Class are at an increased risk of identity theft as a result of Defendants' failure to protect the personal information of Plaintiff and the Class;

l. Whether Defendants violated the Maine Unfair Trade Practices Act, 5 M.R.S.A. § 205-A *et seq;*

m. Whether Plaintiff and Class members have sustained damages, and if so, what is the proper measure of those damages; and

n.      Whether statutory damages are proper in this matter, and in what amount.

61.      Plaintiff's claims are typical of the claims of the respective Class he seeks to represent, because the Sensitive Information of Plaintiff, like the Sensitive Information of all members of the proposed Class, was intentionally and illegally distributed and/or sold by employees, representatives, and/or agents of Defendants.

62.      Plaintiff will fairly and adequately represent and protect the interests of the Class, in that he has no interest that is antagonistic to or that irreconcilably conflicts with interests of other members of the Class.

63.      Plaintiff has retained counsel competent and experienced in the prosecution of class action litigation.

64.      A class action is superior to all other available methods for the fair and efficient adjudication of Plaintiff's and Class members' claims.  Plaintiff and Class members have suffered harm as a result of Defendants' conduct.  Certification of a class action to resolve these disputes will reduce the possibility of repetitious litigation involving, potentially, millions of class members.  Further, certification is appropriate under Federal Rule of Civil Procedure 23, as the Class satisfies the requirement of Rules 23(a) and 23(b)(3).

## COUNT I -  NEGLIGENCE

65.      Plaintiff repeats and realleges the allegations contained in each of the paragraphs of this complaint as if fully set forth herein.

66.      Defendants came into possession of Plaintiff's and Class members' Sensitive Information, and had a duty to exercise reasonable care in safeguarding and protecting such information from being compromised and/or stolen.

67.     Defendants had a duty to timely disclose that Plaintiff's and Class members' Sensitive Information within their possession had been, or was reasonably believed to have been, compromised.

68.     Defendants had a duty to have procedures in place to detect and prevent the dissemination of Plaintiff's and Class members' Sensitive Information by their employees.  This breach of security and unauthorized access was reasonably foreseeable to Defendants.

69.     Defendants, through their actions and/or omissions, unlawfully breached their duty to Plaintiff and Class members by failing to exercise reasonable care in protecting and safeguarding Plaintiff's and Class members' Sensitive Information within Defendants' possession.

70.     Defendants, through their actions and/or omissions, breached their duty to Plaintiff and Class members by failing to have procedures in place to detect and prevent dissemination of Plaintiff's and Class members Sensitive Information by their employees. Defendants are responsible for their employees' actions.

71.     Defendants, through their actions and/or omissions , breached their duty to timely disclose the fact that Plaintiff's and Class members' Sensitive Information within their possession had been, or was reasonably believed to have been, compromised.

72.     But for Defendants' negligent and wrongful breach of their duties owed to Plaintiff and Class members, Plaintiff's and Class members Sensitive Information would not have been compromised.

73.     Plaintiff's and Class members' Sensitive Information was compromised, viewed, and/or stolen as the proximate result of Defendants failing to exercise reasonable care in safeguarding such information by adopting, implementing, or maintaining

appropriate security measures to protect and safeguard Plaintiff's and Class members'
Sensitive Information.

74.     Plaintiff and Class members suffered actual damages including, but not
limited to, expenses and time spent on credit monitoring and identity theft insurance,
anxiety, emotional distress, loss of privacy, and other economic and non-economic harm.

## COUNT II - BAILMENT

75.     Plaintiff repeats and realleges the allegations contained in each of the
paragraphs of this complaint as if fully set forth herein.

76.     Plaintiff and the Class delivered and entrusted their personal information
to Defendants for the sole purpose of applying for mortgage loans with Defendants.

77.     During the time of bailment, Defendants owed Plaintiff and the Class a
duty to safeguard this information properly and maintain reasonable security procedures
and practices to protect such information.  As alleged herein, Defendants breached this
duty.

78.     As a result of these breaches of duty, Plaintiff and the Class have been
harmed as alleged herein.

## COUNT III - BREACH OF IMPLIED CONTRACT

79.     Plaintiff repeats and realleges the allegations contained in each of the
paragraphs of this complaint as if fully set forth herein.

80.     Defendants came into possession of Plaintiff's and Class members'
Sensitive Information and had an implied contract with Plaintiff and Class members to
protect such information, by  way of Plaintiff and Class members providing Defendants
with the requisite mortgage account information.

81.     The implied contract required Defendants to not disclose Plaintiff's and Class members' Sensitive Information to unauthorized third party entities, and to safeguard and protect the information from being compromised and/or stolen.

82.     Defendants did not safeguard and protect Plaintiff's and Class members' Sensitive Information from being compromised and/or stolen.  Indeed, Defendants disclosed this information to unauthorized buyers.

83.     Because Defendants disclosed Plaintiff's and Class members' Sensitive Information and failed to safeguard and protect Plaintiff's and Class members' Sensitive Information from being compromised and/or stolen, Defendants breached their contract with Plaintiff and Class members.

84.     Plaintiff and Class members suffered and will continue to suffer actual damages, including but not limited to the cost and time spent on credit monitoring and identity theft insurance, anxiety, emotional distress, loss of privacy, and other economic and non-economic harm.

## COUNT IV - VIOLATION OF CONSTITUTIONAL RIGHT TO PRIVACY

85.     Plaintiff repeats and realleges the allegations contained in each of the paragraphs of this complaint as if fully set forth herein.

86.     Fundamental to privacy is the ability to control circulation of personal information.  The proliferation of business records over which individuals have no control limits their ability to control their personal lives.  Thus, personal privacy is threatened by the information-gathering capabilities and activities of private business as when these businesses fail to adequately safeguard such information.

87.     Plaintiff and the Class have a legally protected privacy interest in their birthdates, social security numbers, property values, bank and credit card account

numbers, and other personal information.  In addition, Plaintiff and Class members have a reasonable expectation of privacy in this information.  Defendants' invasion of this privacy interest is serious in that it puts Plaintiff and Class members at risk of identity theft and the potential for substantial costs and injury associated with various crimes of identity theft.

88.     Defendants and their employees made unauthorized intrusions into Plaintiff's and Class members' privacy by accessing, disclosing, disseminating and/or selling their Sensitive Information without their knowledge, authorization or consent. This unauthorized disclosure and/or sale of such private facts and information is one that is highly offensive or objectionable to a reasonable person of ordinary sensibilities. Moreover, the disclosure of such private facts and information, as alleged herein, does not include information that is of a legitimate public concern.

89.     Defendants and their employees violated the rights of privacy of Plaintiff and Class members by acquiring, disclosing and/or selling their Sensitive Information without their consent.  Plaintiff's and Class members' Sensitive Information has value, and Defendants' and their employees' unlawful use, disclosure and/or sale of that information was made for their own benefit.

90.     By reason of the conduct alleged herein, and by failing to protect against the theft of personal information of Plaintiff and the Class, Defendants violated the constitutional right of privacy of Plaintiff and the Class, and Plaintiff and Class members have been harmed as a result thereof.

91.     Plaintiff and Class members suffered and will continue to suffer actual damages, including but not limited to cost and loss of time for credit monitoring and

identity theft insurance, anxiety, emotional distress, loss of privacy, and other economic and non-economic harm.

## COUNT V – VIOLATIONS OF THE
## MAINE UNFAIR TRADE PRACTICES ACT

92.     Plaintiff repeats and realleges the allegations contained in each of the paragraphs of this complaint as if fully set forth herein.

93.     Maine's Unfair Trade Practices Act, 5 M.R.S.A. § 205-A *et seq.*, prohibits unfair or deceptive acts or practices in the conduct of any trade or commerce.  Under Maine's UTPA, "trade" and "commerce" include the "the advertising, offering for sale, sale or distribution of any services …and any…thing of value wherever situate," and "any trade or commerce directly or indirectly affecting the people of [Maine]."

94.     Plaintiff and Class members are persons as defined by 5 M.R.S.A. § 206(2).

95.     The acts and practices engaged in by Defendants, and described herein, constitute unlawful and unfair practices in that: (a)  Defendants' practices violated federal, state, statutory, regulatory, or industry standards as described herein, including, but not limited to, the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* and the constitutional right to privacy; and (b) Defendants failed to provide reasonable security measures for Plaintiff's and Class members Sensitive Information, thereby placing Plaintiff and Class members at a higher risk of identity theft crimes.

96.     The injury to Plaintiff and Class members caused by Defendants' failure to instill, adopt, and maintain reasonable security procedures to protect their Sensitive Information is substantial.  As a result, the Sensitive Information of Plaintiff and Class members have been substantially compromised, placing them at a significant risk of being victims of identity theft crimes and other harm.

97.     Pursuant to Maine's UTPA, Plaintiff and Class members are entitled to actual damages, restitution, and such other equitable relief, including an injunction, as the court determines to be necessary and proper.

## COUNT VI  - INTENTIONAL VIOLATIONS OF THE FAIR CREDIT REPORTING ACT

98.     Plaintiff repeats and realleges the allegations contained in each of the paragraphs of this complaint as if fully set forth herein.

99.     The Fair Credit Reporting Act ("FCRA") was created to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information, in a manner which is fair and equitable to the consumer with regard to the confidentialtiy, accuracy, relevancy, and proper utilization of such information.  *See* 15 U.S.C. § 1681 *et seq.*

100.     Under FCRA, a "Consumer Report" means any written, oral or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for credit or insurance to be used primarily for personal, family, or household purposes, employment purposes, or any other purpose authorized under 15 U.S.C. § 1681b, 15 U.S.C. § 1681a(d)(1).

101.     Under FCRA, a "Consumer Reporting Agency" means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing Consumer Reports to third

parties, and which uses any means of facility of interstate commerce for the purpose of preparing or furnishing Consumer Reports.

102.    Plaintiff and other Class members are "consumers" or "persons" as defined and construed under FCRA (15 U.S.C. § 1681a(b) & (c)).

103.    Defendants are Consumer Reporting Agencies as defined under FCRA because they, for monetary fees, regularly engage in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing Consumer Reports to third parties, and use interstate commerce for the purpose of preparing or furnishing consumer reports.

104.    The Consumer Information sold, disseminated, or otherwise provided access to by Defendants' employees and is defined under the FCRA.

105.    As Consumer Reporting Agencies, Defendants are required to maintain reasonable procedures designed to limit the furnishing of Consumer Reports to the permissible purposes outlined under FCRA.  *See* 15 U.S.C. § 1681e.

106.    In conscious disregard of the rights of Plaintiff and Class members, Defendants deliberately and/or recklessly did not maintain reasonable procedures designed to limit the furnishing of Consumer Reports, personal and/or financial information to the permissible purposes outlined under FCRA, specifically 15 U.S.C. § 1681e.

107.    Defendants' deliberate and/or reckless conduct allowed its employees to obtain the Consumer Reports, personal and/or financial information of Plaintiff and Class members, and to sell, disseminate, and/or otherwise provide access to Plaintiff's and Class members' Consumer Information to unauthorized third parties without the consent of Plaintiff or Class members, and for no permissible purpose under FCRA.

27

108.   Defendants are responsible for their employees' actions as agents of Defendants.

109.   Defendants' conduct violated FCRA, and Plaintiff and Class members have been damaged by their deliberate and/or reckless actions.  At all times material, Defendants had full knowledge of their employees' conduct.

110.   As a result of Defendants' conduct, Plaintiff is entitled to actual damages sustained or statutory damages of not less than $100 and not more than $1,000 per violation, as well as costs and attorneys' fees in bringing this action. 15 U.S.C. § 1681n.

## COUNT VII - NEGLIGENT VIOLATIONS OF THE FAIR CREDIT REPORTING ACT

111.   Plaintiff repeats and realleges the allegations contain in each of the paragraphs of this complaint as if fully set forth herein.

112.   Defendants are Consumer Reporting Agencies as defined under FCRA because they for monetary fees, regularly engage in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing Consumer Reports to third parties, and use interstate commerce for the purpose of preparing or furnishing Consumer Reports.

113.   The Consumer Information sold by Defendants' employees amounted to Consumer Reports as defined under FCRA.

114.   As a Consumer Reporting Agency, Defendants are required to maintain reasonable procedures designed to limit the furnishing of Consumer Reports to the permissible purposes outlined under FCRA. *See* 15 U.S.A. § 1681e.

115.   Defendants were negligent in failing to maintain reasonable procedures to protect Plaintiff's and Class members' Consumer Reports, personal and/or financial information.

116.     Defendants' negligent conduct allowed their employees to obtain Plaintiff's and Class members' Consumer Reports, personal and/or financial information and sell it to third parties without the consent of Plaintiff or Class members, and for no permissible purpose under FCRA.

117.     Defendants are responsible for its employee's actions as agents of Defendants.

118.     Plaintiff and Class members have been damaged by Defendants' negligent actions.

119.     As a result of Defendants' negligent conduct, Plaintiff is entitled to actual damages sustained or statutory damages of not less than $100 and not more than $1,000 per violation, as well as the costs and attorneys' fee in bringing this action.  15 U.S.C. § 1681n.

## COUNT VIII  -  CONVERSION

120.     Plaintiff repeats and realleges the allegations contained in each of the paragraphs of this complaint as if fully set forth herein.

121.     Sensitive Information is constitutes legal property.  Plaintiff and Class members own all legal and possessory rights to their Sensitive Information.

122.     Plaintiff and Class members entrusted their Sensitive Information to Defendants, and Defendants, thereafter, acted in a manner inconsistent with Plaintiff's and Class members' interest, by selling the information to Buyers.

123.     Defendants deliberately, recklessly, and/or negligently sold Plaintiff's and Class members' Sensitive Information to Buyers without Plaintiff's and Class members' authorization, knowledge, and/or consent.

124.    Defendants, without Plaintiff's or Class members' authorization, misappropriated their Sensitive Information.

125.    Plaintiff and Class members were damaged as the proximate result of Defendants misappropriating and selling Plaintiff's and Class members' Sensitive Information without their consent.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that the Court enter an Order:

a.    Certifying the proposed nationwide Class herein under Federal Rule of Civil Procedure 23(a) and (b)(3) and appointing Plaintiff and Plaintiff's counsel of record to represent said Class;

b.    Finding that Defendants breached their contract to safeguard and protect Plaintiff's and Class members' Sensitive Information stored on their computer systems and in their physical possession;

c.    Finding that Defendants are responsible for its employees' actions as agents of Defendants;

d.    Enjoining Defendants from action which places consumers at a risk of future security breaches;

e.    Requiring Defendants to identify to Plaintiff and members of the Class to whom their information was sold;

f.    Finding the Defendants violated the provisions of the Maine Unfair Trade Practices Act, 5 M.R.S.A. § 205-A *et seq.;*

g.     Award injunctive relief, including not limited to: (i) the
       provision of credit monitoring and/or credit card
       monitoring services for the Class; (ii) the provision of
       identity theft insurance for the Class; and (iii) the
       requirement that Defendants receive  periodic compliance
       audits by a third party regarding the security of its
       computer systems used for processing and storing customer
       data.

h.     Award compensation to anyone who suffers damage
       as a result of the unauthorized release of their
       Sensitive Information;

i.     Awarding damages to Plaintiff and Class members
       under the common law theory alleged herein;

j.     Awarding punitive and treble damages as provided under
       relevant laws;

k.     For declaratory relief as this Court deems appropriate;

l.     Awarding all costs, including experts' fees and attorneys'
       fees, and the costs of prosecuting this action;

m.     For an order awarding pre-judgment and post-judgment
       interest as prescribed by law; and

n.     Providing for other legal and/or equitable relief as is
       permitted at law and as justice requires.

**<u>JURY TRIAL DEMANDED</u>**

Plaintiff hereby demands a trial by jury on all issues so triable.


Dated:  October 20, 2008          /s/ Samuel W. Lanham, Jr..
                                Samuel W. Lanham, Jr., Esq.
                                Lanham Blackwell, P.A.
                                470 Evergreen Woods
                                Bangor, ME  04401
                                Phone:  (207) 942-2898
                                *slanham@lanhamblackwell.com*



OF COUNSEL:

BARNOW AND ASSOCIATES, PC.
BEN BARNOW, ESQ.
One North LaSalle Street, Suite 4600
Chicago, IL  60602
Phone:  (312) 621-2000


HARKE & CLASBY LLP
LANCE A. HARKE, ESQ.
155 South Miami Ave., Suite 600
Miami, Florida 33130
Phone:  (305) 536-8220